**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | * | |
| ERICKY BOGUES, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. 1:23-cv-01334-PX |
| WARDEN JEFFREY NINES, *et al.*, | * | |
| Defendants. | * | |

***

**MEMORANDUM OPINION**

Plaintiff Ericky Bogues ("Bogues"), an inmate at North Branch Correctional Facility ("NBCI"), accuses the Maryland Department of Public Safety and Correctional Services ("DPSCS") and several officials of providing him with inadequate nutrition during his 2022 Ramadan fast. ECF No. 1. Pending is Bogues's motion for leave to file an amended complaint to add several claims and Defendants DPSCS, Robert L. Green ("Green"), Annie D. Harvey ("Harvey"), O. Wayne Hill ("Hill"), and Carolyn J. Scruggs ("Scruggs"). ECF Nos. 58 & 58-4. Defendants oppose the motion on futility grounds. ECF No. 67. The issues are fully briefed, and the Court finds no hearing necessary. *See* D. Md. Loc. R. 105.6. For the reasons stated below, Bogues's motion is granted in part and denied in part.

## I. Background

Bogues is a practicing Muslim who observes the holy month of Ramadan. *See* ECF No. 1 at 2–3. In 2022, Bogues participated in the requisite Ramadan fast during daylight hours. *Id.* Per Maryland state regulations, inmates observing Ramadan must receive a regular breakfast before sunrise and an "enhanced meal" consisting of "a dinner meal with additional portions of food

provided" to satisfy the inmates' "minimum daily nutritional needs during a religious observance of fasting." COMAR 12.03.02.03.01B(5), 12.03.02.03.10(B). DPSCS sets minimum daily nutritional needs at 2,800 to 3,000 calories with specific requirements for allotments of protein, fat, carbohydrates, and dietary fiber. *See* DPSCS *Medical Diet Manual* App. 1 (2012); ECF No. 58-6 at 4.

Evidently, NBCI was no stranger to inmate complaints of inadequate nutrition during Ramadan. In 2013, another inmate filed a similar grievance, found meritorious by the Commissioner of Correction. *See* ECF No. 58-4 ¶ 58. The Commissioner particularly agreed that "participants in the fast should be given additional food items for dinner to bring them up to the required caloric intake for the day," and that the grievance "succeeded in enlightening the institution" on its dietary obligations. *Id.* In 2016, another grievance followed, during which NBCI Food Services Manager and Defendant in this case, Parrish Kammauf ("Kammauf"), conceded that a minimum 2,800 daily calories must be provided to "inmates who choose to observe/participate in Ramadan." ECF No. 36-18; *see also* ECF No. 58-4 ¶ 59. Two federal lawsuits followed, challenging insufficient provision of nutritionally adequate meals at NBCI during Ramadan. *See Poole v. Bishop*, No. 1:17-cv-01594-GLR (D. Md. Feb. 5, 2019), ECF No. 1 at 8 (suing DPSCS and NBCI officials for failing to provide adequate nutrition during Ramadan, in contravention of *Dicks v. Shearin*, No. 1:14-cv-02384-GLR (D. Md. July 24, 2014)); *Dicks*, ECF No. 20 at 6–10 (allowing Free Exercise and Eighth Amendment claims to proceed based on denial of adequate nutrition during Ramadan at NBCI).

Nonetheless, NBCI once again denied a practicing Muslim, Bogues, sufficient nutrition during the 2022 Ramadan holiday. Bogues, in turn, proceeded pro se, and sued NBCI Warden Jeffrey Nines ("Nines"), Chaplain Kevin Lamp ("Lamp"), and Kammauf for imposing an

unconstitutional burden on his First Amendment right to free exercise of religion, and for inflicting cruel and unusual punishment in violation of the Eighth Amendment. ECF No. 1.

After the Court allowed his claims to proceed and appointed counsel, discovery ensued. In discovery, Defendants provided "charts" which purported to show that Muslim inmates including Bogues received sufficient nutrition during Ramadan. *See* ECF No. 58-4 ¶¶ 61–63. But when pressed, prison officials confirmed in deposition that the charts were, at best, incomplete, and at worst, intentionally misleading. *See* ECF Nos. 58-4 ¶¶ 30–40, 58-7, & 58-8. This is because the charts reflect the caloric values for the nonreligious menu applicable to the general prison population, *not* the meals served to Bogues during Ramadan. ECF No. 58-4 ¶¶ 42–43. Indeed, to date, Defendants have yet to produce any evidence that reflects what Bogues had actually been fed during Ramadan, and Defendants maintain that DPSCS "lost" the data. *Id.* ¶ 46.

Bogues now moves to amend his Complaint to add four related counts, as well as new Defendants DPSCS and four former and current DPSCS officials with supervisory authority over prison operations, including provision of food to inmates. ECF Nos. 58-1 & 58-4 ¶¶ 73–77, 88–104. Specifically, in Counts I and II, Bogues repeats the original First and Eighth Amendment claims against Nines, Kammauf, and Lamp for undue religious burden and denial of adequate nutrition during Ramadan. Count III adds DPSCS, then-Secretary of DPSCS Green, then-Commissioner of Correction Harvey, then-Deputy Secretary of Operations Hill, and current DPSCS Secretary Scruggs,[1] in their individual and official capacities, alongside Nines and Kammauf, for violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* Count IV brings against Green, Harvey, Hill, Kammauf, Nines and

[1] The Amended Complaint refers to Defendant as both "Scruggs" and "Scrugg." *See* ECF No. 58-4. The Court notes that Scruggs is the correct spelling. *See Leadership*, Md. Dep't of Pub. Safety and Corr. Servs., https://dpscs.maryland.gov/about/leadership.shtml (last visited Aug. 24, 2026).

Scruggs a Fourteenth Amendment due process claim for failing to provide adequate nutrition during Ramadan. Lastly, Counts V and VI assert companion state constitutional claims against Green, Harvey, Hill, Kammauf, Nines, and Scruggs that mirror Counts I and II.

As to the new Defendants, Bogues avers that their liability stems from their official responsibilities for ensuring that DPSCS staff established and followed policies to accommodate religious dietary needs, provide compliant meals, address inmate concerns, and receive necessary training. ECF No. 58-4 ¶¶ 78–83. Bogues further avers that the DPSCS Defendants knew that NBCI provided plainly insufficient Ramadan meals, yet did nothing to correct the nutritional deficiencies, institute an accurate methodology for nutrition reporting, and respond to his complaints. *Id.* As relief, Bogues seeks money damages for past harms, as well as corrective injunctive relief going forward. *Id.* ¶¶ 106, 124, 136, 157, 176.

Defendants now raise a host of arguments for why the amended claims fail as a matter of law, thus rendering amendment futile. *See* ECF No. 67. Because the proposed amended claims are for the most part not futile, the Court will allow amendment consistent with this opinion.

## II. Analysis

### A. Standard of Review

Amendment of pleadings should be liberally granted "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 706 (D. Md. 2011). "[A] request to amend should only be denied if . . . 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.'" *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012) (quoting *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th

Cir. 2009)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend should be denied in the face of "undue delay, bad faith or dilatory motive on the part of the movant").

A proposed amendment is futile when it "is clearly insufficient or frivolous on its face," and thus cannot survive a motion to dismiss. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986); *Whitaker v. Ciena Corp.*, Civil Action No. RDB-18-0044, 2018 WL 3608777, at *3 (D. Md. July 27, 2018) (quoting *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 200 (4th Cir. 2014)). In assessing whether a claim is futile, the Court reviews the claim for sufficiency pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Kerrigan v. Bd. of Educ.*, Civil No. JKB-14-3153, 2016 WL 470827, at *3 (D. Md. Feb. 8, 2016). Pursuant to Rule 12(b)(6), the Court accepts "the well-pled allegations of the complaint as true, and [it] construe[s] the facts and reasonable inferences" most favorably to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). With this standard in mind, the Court assesses the sufficiency of each new claim in turn.

**B. Count III – RLUIPA Violation**

The RLUIPA Count turns on Defendants' alleged denial of adequate nutrition during Ramadan, which imposed "a substantial burden on the religious exercise of a person residing in or confined to an institution . . . ." *Id.* § 2000cc-1(a); ECF No. 58-4 ¶ 118. "A substantial burden exists where a regulation 'puts substantial pressure on [the plaintiff] to modify its behavior.'" *Jesus Christ Is the Answer Ministries, Inc. v. Balt. Cnty.*, 915 F.3d 256, 260 (4th Cir. 2019) (quoting *Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 556 (4th Cir. 2013)).

Defendants oppose amendment principally on Eleventh Amendment immunity grounds. ECF No. 67 at 15. They argue that RLUIPA does not waive immunity for damages claims against state officials. *Id.* As for injunctive relief, Defendants singularly maintain that Green, Harvey, and Hill, as former officials, cannot be sued for prospective injunctive relief. *Id.*

Defendants are correct that the Eleventh Amendment protects a state and its agents or employees from citizen suits brought in federal court. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). Because Eleventh Amendment immunity "is an immunity from suit rather than a mere defense to liability," where applicable, the claim cannot proceed. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 482 (4th Cir. 2005). Defendants bear the burden of demonstrating that the protections of immunity apply. *Hutto v. S.C. Retirement Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).

Although a statute may waive Eleventh Amendment immunity, *see Bd. of Trustees of Univ. of Ala.*, 531 U.S. at 363, waiver is construed narrowly, *see Sossamon v. Texas*, 563 U.S. 277, 285 (2011). For RLUIPA, Congress conditioned federal prison funding on a state's consent to be sued, at least as to claims for injunctive relief. *See Madison v. Virginia*, 474 F.3d 118, 130-131 (4th Cir. 2006); 42 U.S.C. §§ 2000cc-2(a), 2000cc-5(4) ("a government" includes an "agency" of "a State"). Accordingly, the official capacity claims are "treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus, claims for injunctive relief against the state through its current officers are not subject to Eleventh Amendment protection. But claims for money damages may only proceed if the named defendant has consented to suit. *Landor v. La. Dep't of Corr. & Pub. Safety*, 146 S. Ct. 1931, 1942 (2026).

Defendants do not meaningfully argue that they are immune from suit for injunctive relief. And such suits clearly may proceed. *See Madison*, 474 F.3d at 130–31 ("Because 'appropriate relief' ordinarily includes injunctive and declaratory relief, Madison's claims for equitable relief are not barred by the Eleventh Amendment." (citation omitted)). Thus, the RLUIPA challenge survives as to declaratory and injunctive relief.

Next, as to Hill, Green, and Harvey, who contend they cannot be sued as former officers, the Court agrees, but for different reasons than they maintain. They argue that because they are no longer in office, claims against them are "moot." ECF No. 67 at 15. The claims are not "moot" in the context of an official capacity suit because the claim is tantamount to "a suit against the official's office." *Will*, 491 U.S. at 71. That said, official capacity suits proceed against the *current* officers. Federal Rule of Civil Procedure 25(d) further requires automatic substitution of former officials for the current ones as a matter of law. *See Hafer*, 502 U.S. at 25; *Maryland v. United States*, 360 F. Supp. 3d 288, 318 (D. Md. 2019); *see, e.g., Pevia v. Moyer*, Civil Action No. DLB-19-327, 2022 WL 991399, at *12 n.7 (D. Md. Mar. 31, 2022) (replacing Green with his successor and substituting Harvey for her predecessor in a suit for injunctive relief under RLUIPA). Thus, the RLUIPA claim against DPSCS through its current officers is not futile. [2]

**C. Count IV – Due Process Clause of the Fourteenth Amendment**

As to Count IV, the proposed claim asserts that Bogues retains a "liberty interest" in receiving nutritionally adequate food which Defendants denied him during Ramadan 2022. ECF No. 58-4 ¶¶ 119, 126. To make plausible "a liberty interest meriting procedural due process protection, a prisoner must show (1) denial of an interest that can arise either from the Constitution

[2] The Clerk is directed to substitute Deputy Secretary of Operations David C. Greene ("Greene") and Commissioner of Correction J. Philip Morgan ("Morgan") for Defendants Harvey and Hill, as well as Defendant Scruggs for Defendant Green, in all counts brought against them in their official capacities.

itself or from state laws or policies, and that (2) this denial imposed on him an atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Prieto v. Clarke*, 780 F.3d 245, 251 (4th Cir. 2015) (citation modified) (quoting *Lovelace v. Lee*, 472 F.3d 174, 202 (4th Cir. 2006)).

Notably, Defendants do not challenge that denial of adequate nutrition is a protected liberty interest. But at the same time, Bogues provides no law, binding or persuasive, which establishes the same. Nonetheless, the Court recognizes that Bogues certainly retains a First Amendment right to nutritionally adequate food "consistent with his Muslim faith." *See* ECF No. 18; *see also Muhammad v. Fleming*, No. 7:17-cv-00481, 2025 WL 2779306, at *8 (W.D. Virginia, Sep. 30, 2025) (quoting *Atkins v. Md. Div. of Corr.*, Civil Action No. PWG-14-3312, 2015 WL 5124103, at *8 (D. Md. Aug. 28, 2015); *Coleman v. Jones*, No. 20-7382, 2022 WL 2188402, at *5 (4th Cir. June 17, 2022)). The Court will not, at the pleading stage, restrict a companion Fourteenth Amendment claim, especially where Defendants do not challenge the claim on this basis.

Rather, Defendants press far more basic, and less meritorious, objections. They argue the claim fails because: (1) DPSCS is not a "person" capable of being sued for a constitutional violation pursuant to 42 U.S.C. § 1983; (2) Eleventh Amendment immunity bars any official capacity suit; (3) the pleading fails to aver plausibly Defendants' direct involvement in the alleged violation; and (4) the claims are time barred. *See* ECF No. 67 at 5–8, 11–15. The Court takes each argument in turn.

The first is resolved easily. Bogues makes clear that DPSCS is sued only through its officials in their official capacities, and he is not suing DPSCS itself. *See* ECF No. 58-4 ¶ 124; *see also* ECF No. 68 at 10 & App. Nor does the proposed amended claim name DPSCS as a

defendant in this count. The Court, in short, is at a loss for why Defendants press this contention at all.

Next, as to Eleventh Amendment immunity, the Court agrees that Defendants are protected from suit for money damages. *See Sikes v. Ward*, Civil Action No. TDC-16-4108, 2017 WL 6055686, at *4 (D. Md. Dec. 6, 2017). But as to "prospective relief from ongoing violations of federal law," Defendants well know that *Ex Parte Young*, 209 U.S. 123 (1908), permits suit. *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018); *accord Indus. Servs. Grp. v. Dobson*, 68 F.4th 155, 163 (4th Cir. 2023). Where a plaintiff demands that state officials be enjoined from implementing policy or engaging in behavior in violation of federal law, Eleventh Amendment immunity does not apply. *Verizon Md. Inc. v. Pub. Serv. Comm'n.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in the judgment)).

The Proposed Amended Complaint, viewed most favorably to Bogues, articulates specific injunctive relief aimed at rectifying longstanding deprivation of adequate nutrition during Ramadan. Bogues asks that the Court direct Defendants to provide adequate nutrition during Ramadan, alongside corrective training, supervision, and evaluative processes to ensure the same. *See* ECF No. 58-4 ¶ 176. The Proposed Amended Complaint further makes clear that without injunctive relief, the consistent pattern of denying adequate nutrition, which dates back to 2013, will continue unabated. *See id.* ¶ 131. Thus, the *Ex Parte Young* exception applies, and the claims seeking injunctive relief against Defendants in their official capacities can proceed. *See* ECF No. 68 at 12 n.7.

Third, as to individual capacity claims premised on § 1983 supervisory liability, Defendants correctly maintain that the doctrine of *respondeat superior* is unavailable to Bogues.

*See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Supervisory official liability under § 1983 can proceed, however, if "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To make plausible such a claim, the proposed pleading must include some facts that show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisors response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citation modified).

Defendants maintain that no facts show sufficient knowledge of the ongoing deprivation to sustain the claim. The Court disagrees. Each named Defendant but Scruggs occupied their respective supervisory roles in 2022 when Bogues was denied sufficient nutrition during Ramadan.[3] This was against the backdrop of nine years of consistent complaints from inmates to NBCI about inadequate nutrition during Ramadan, *see* ECF No. 58-4 ¶ 60–63, and *two* federal lawsuits against NBCI about the same. Indeed, in 2014 DPSCS former Commissioner of Correction agreed that NBCI's meals were insufficient, but that DPSCS would correct the deprivation going forward. *Id.* ¶ 58. And yet, in 2022, nothing appears to have changed. These facts make plausible that the named officials knew observant Muslim prisoners including Bogues had not received adequate nutrition during Ramadan.

[3] Defendants do not argue that Scruggs, who took office in 2023, ECF No. 58-5 at 20, should be treated differently from other named Defendants on that basis. *See* ECF No. 67.

The proposed pleading also makes plausible a pattern of denial with deliberate indifference. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Shaw*, 13 F.3d at 799 (quoting *Slakan*, 737 F.2d at 373). Given the near decade-long stream of complaints regarding the nutritional insufficiency of Ramadan meals, this violation may be widespread. *See* ECF No. 58-4 ¶¶ 58–63. Further, the pleading makes plausible that Defendants' implementation of a flawed reporting process on the caloric sufficiency of Ramadan meals was designed to deliberately conceal the inadequacy of the meals themselves.

Last, as to limitations, Defendants maintain that the added claims are "completely new" and thus have been raised beyond the applicable three-year statute of limitations. ECF No. 68 at 14–15. Federal Rule of Civil Procedure 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1). That is this. The new and original claims all stem from Defendants persistent denial of adequate nutrition during Ramadan 2022.

As for the new parties, Rule 15(c) allows amendment where "the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Id.* 15(c)(1)(C). Defendants do not squarely argue that Rule 15(c) bars the addition of new defendants, or that the new Defendants lacked notice of the suit. Perhaps because the new Defendants were the very officials responsible for the operation of NBCI in 2022, including creation and implementation of food services and nutritional policies which historically have been persistently violated as to Bogues and other inmates. *See*

ECF No. 58-4 ¶ 3; *see also* ECF Nos. 58-5, 58-6, & 58-7. In any event, limitations remain an affirmative defense not generally amenable to resolution at the dismissal stage. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Thus, limitations will not render a proposed amended claim futile unless "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Id.* (emphasis omitted) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). Here, the Proposed Amended Complaint makes plausible the new Defendants' knowledge and disregard of the historic deficiencies at NBCI during Ramadan, and nothing suggests they are prejudiced by their addition to this suit. Thus, the claim plausibly relates back to the original Complaint and will not be dismissed on limitations grounds.

### D. Counts V & VI – Maryland Declaration of Rights Articles 25 and 36

Next, as to the state constitutional claims, Count V asserts a companion allegation to Count II under Article 25 of the Maryland Constitution's Declaration of Rights for cruel and unusual punishment arising from the denial of adequate nutrition. ECF No. 58-4 ¶¶ 136–37, 150. And Count VI mirrors Bogues's First Amendment claim in Count I, alleging a substantial burden on religion in violation of Article 36. *See id.* ¶¶ 157–58, 169. Bogues brings both counts against Harvey, Hill, Green, Scruggs, Nines, and Kammauf in their individual and official capacities, and he seeks damages, declaratory relief, injunctive relief, and costs. *Id.* ⁋ 135–75. Defendants singularly repeat that the claims are barred on limitations and immunity grounds. *See* ECF No. 67 at 13–15. Defendants' statute of limitations argument mimics Defendants' attempt to defeat the § 1983 claim and likewise fails on the bases already discussed. *See supra*, at 11–12.

As to immunity, Defendants argue only that they enjoy protection under the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., State Gov't, § 12-101. *See* ECF No. 67 at 9–11. This is so, say Defendants, because no facts make plausible that Defendants acted with the "malice or

gross negligence" necessary to waive sovereign immunity under the MTCA. *Id.* at 10 (quoting Md. Ann. Code, Cts. & Jud. Proc. § 5-522(b)).[4] The MTCA aims to "insulate state employees generally from tort liability if their actions are within the scope of employment and without malice or gross negligence." *Lee*, 384 Md. at 261. Malice is "characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud . . . ." *Id.* at 268 (internal quotations omitted) (quoting *Shoemaker v. Smith*, 353 Md. 143, 163 (1999)). Gross negligence is defined as "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another . . . ." *Barbre v. Pope*, 402 Md. 157, 187 (2007) (quoting *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 635 (1985)). To make plausible a waiver of sovereign immunity, therefore, some averred facts must show that the Defendants acted within the scope of employment and with malice or gross negligence. *See Boyer v. State*, 323 Md. 558, 579 (1991). Mere negligence will not suffice. *See Taylor v. Harford Cnty. Dep't of Soc. Servs.*, 384 Md. 213, 229 (2004) ("We view gross negligence as something *more* than simple negligence.").

When viewed most favorably to Bogues, the proposed amendment makes plausible that Defendants' acts or omissions were grossly negligent. Defendants were on notice for years that provision of meals during Ramadan systematically failed Muslim prisoners as nutritionally inadequate. In the last ten years, Defendants have been twice sued for identical violations at NBCI.[5] ECF No. 58-4 ¶¶ 57–59. And in the years since, NBCI has been grieved by inmates complaining that they have not received sufficient nutrition during Ramadan. *Id.* ¶ 60. Yet, in this

[4] The Court doubts that prospective injunctive relief is available to Bogues for violations of the state constitution when pursued in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Harford Cnty. Branch of the NAACP v. Gahler*, 2026 WL 1719352, at *13–14 (D. Md. June 15, 2026); *Gmeiner v. Kent*, 181 F.4th 677, 689 (6th Cir. 2026). The Defendants, however, do not address the limits of *Ex Parte Young* as applied to state claims. The Court expects this matter will be briefed at summary judgment.

[5] *See generally Poole*, 1:17-cv-01594-GLR; *Dicks*, 1:14-cv-02384-GLR.

case, Defendants provide "charts" claiming to show total nutritional values of meals served to Bogues during Ramadan 2022, when in fact the evidence relates to non-Ramadan meals served in the ordinary course. Together, the pleading makes plausible that Defendants are, at minimum, acting with gross negligence in failing to provide nutritionally adequate meals during Ramadan. The claims are not futile, and so the Court grants amendment.

## III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Bogues's motion for leave to amend the Complaint. The Court accepts the Proposed Amended Complaint as the operative pleading and allows Count III to proceed against DPSCS directly and through Scruggs, Greene, and Morgan in their official capacities for declaratory and injunctive relief; Count IV against Harvey, Hill, Green, Scruggs, Nines, and Kammauf in their individual capacities for damages, and against Scruggs, Greene, and Morgan in their official capacities for declaratory and injunctive relief; and Counts V and VI against Harvey, Hill, Green, Scruggs, Nines, and Kammauf in their individual and official capacities for damages and declaratory and injunctive relief.

A separate order follows.

8/25/2026
Date

/s/
PAULA XINIS
United States District Judge